IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDY GARNER & <br> DENNY GARNER, husband & wife, <br> <br> Plaintiffs, <br> <br> vs. <br> <br> MERCK & CO., INC., <br> <br> Defendant. | **Civil Action No.:** 1:08-cv-4770-DC <br> <br> **COMPLAINT** <br> **AND JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

Plaintiffs, JUDY GARNER and DENNY GARNER, her husband, by and through their attorneys, The Levensten Law Firm, P.C., for their Complaint and Jury Demand against Defendant, allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1332, as complete diversity exists between Plaintiffs and Defendant. Plaintiffs are residents of the State of Idaho, and Defendant is incorporated and has as its primary business in the State of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2. Venue is proper within this district pursuant to Case Management Order No. 3, filed November 1, 2006, signed by John F. Keenan, allowing FOSAMAX-related cases to be filed directly in the Southern District of New York.

## PARTIES

3. Plaintiff JUDY GARNER was born May 15, 1959. Plaintiff used FOSAMAX from approximately 2003 until approximately February 2008. Plaintiff JUDY GARNER was married to DENNY GARNER and they were residents of The State of Idaho at all times material to this action.

4. Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. The Defendant's registered office is at 820 Bear Tavern Road, City of West Trenton, Mercer County, New Jersey.

5. Defendant was at all relevant times authorized to conduct business in the State of Idaho.

6. Defendant has regularly transacted business in the State of Idaho and continues to do so.

7. At all relevant times Defendant, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

8. Defendant, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Idaho for the treatment of osteoporosis.

9. Defendant derives substantial revenue from pharmaceutical products used or consumed in the State of Idaho.

10. Defendant expected, or should have expected, that its business activities could or would have consequences within the State of Idaho.

## SUMMARY OF THE CASE

11. Defendant, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other off-label uses.

12. As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff JUDY GARNER, have suffered and may continue to suffer severe and permanent personal injuries to the jaw bone, including osteonecrosis of the jaw and other diagnoses of irreversible damage to the jaw.

13. Defendant concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff JUDY GARNER, other consumers, and the medical community.

14. Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

15. As a result of Defendant's actions and inaction, Plaintiff JUDY GARNER was injured due to her ingestion of FOSAMAX, which has caused and will continue to cause Plaintiffs' various injuries and damages. Plaintiffs accordingly seek compensatory damages.

## FACTUAL BACKGROUND

16. At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

17. In September 1995, the United States Food and Drug Administration (FDA) approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various

uses, including the treatment of osteoporosis and Paget's Disease.

18. FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

19. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Boniva); risedronate (Actonel); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDR for FOSAMAX confirms that the molecule contains a nitrogen atom.

20. Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw with the use of nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Merck knew or should have known that FOSAMAX, as a nitrogenous bisphosphonate, shared an adverse event profile similar to that of the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

21. Merck knew and or should have known that bisphosphonates, including FOSAMAX, inhibit

endothelial cell function. Similarly, Merck knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

22. Merck also knew or should have known these factors combine to create a compromised vascular supply to the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

23. Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

24. Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

25. Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study of the risk of osteonecrosis of the jaw relative to FOSAMAX. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

26. Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

27. Since FOSAMAX was released, the FDA has received a number of reports of osteonecrosis of the jaw among users of FOSAMAX.

28. On August 25, 2004, the FDA posted its Office of Drug Safety ("ODS") Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

29. As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that osteonecrosis of the jaw was a class effect that specifically extended to the oral bisphosphonate FOSAMAX.

30. As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Merck to specifically warn about the risk of osteonecrosis of the jaw. Merck has refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

31. Rather than warn patients, and despite Defendant's knowledge of an increased risk of osteonecrosis of the jaw in patients using FOSAMAX, Defendant continues to defend FOSAMAX and minimize unfavorable findings.

32. FOSAMAX is one of Defendant's top selling drugs, averaging more than $3 billion a year in sales.

33. Consumers, including Plaintiff JUDY GARNER, who have used FOSAMAX for treatment

of osteoporosis, have several alternative safer products available to treat the conditions.

34. Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff JUDY GARNER, or the medical community, of such risks.

35. As a direct result, Plaintiff JUDY GARNER was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX. Plaintiff JUDY GARNER requires and will in the future require ongoing medical care and treatment for the injuries she suffered as a result of taking FOSAMAX.

36. Plaintiff JUDY GARNER has suffered mental anguish as a result of knowing the life-long complications she will suffer as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

37. Plaintiff JUDY GARNER was prescribed and began taking FOSAMAX in 2003.

38. Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

39. As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe personal injury to the jaw.

40. Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and has sustained permanent injuries and emotional distress.

41. Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

42. Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of

˘7˘

       osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

43. Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX. The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

44. As a result of Defendant's actions, Plaintiff and her prescribing and treating physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## COUNT I
### Negligence

45. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

46. Defendant owed Plaintiff, JUDY GARNER, other consumers, and physicians a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

47. Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

    a. failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

    b. failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

    c. failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

    d. designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

    e. failing to exercise due care when advertising and promoting FOSAMAX; and

    f. negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendant knew or should have known of its adverse effects.

48.     As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JUDY GARNER sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

49.     Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish

Defendant and deter it from similar conduct in the future.

50. Plaintiff JUDY GARNER'S spouse, DENNY GARNER, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

## COUNT II
### Strict Liability

51. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

52. Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff JUDY GARNER.

53. Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

54. Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

55. FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

56. FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

57. FOSAMAX was defective in design or formulation in that it posed a greater likelihood of

injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

58. FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, and or physicians, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

59. Although Defendant knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

60. Plaintiff and or her physician(s) could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

61. As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JUDY GARNER sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.

       Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

62. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

63. Plaintiff JUDY GARNER's spouse, DENNY GARNER, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

## COUNT III
### Breach of Express Warranty

64. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

65. Defendant expressly represented to Plaintiff JUDY GARNER and other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

66. FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

67. At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

68. Plaintiff JUDY GARNER, other consumers, and the medical community relied upon

      Defendant's express warranties.

69. As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JUDY GARNER sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

70. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

71. Plaintiff JUDY GARNER's spouse, DENNY GARNER, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

## COUNT IV
**Breach of Implied Warranty**

72. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

73. Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

74. At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

75. Defendant was aware that consumers, including Plaintiff JUDY GARNER, would use FOSAMAX for treatment of osteoporosis and for other purposes.

76. Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

77. Defendant breached its implied warranty to consumers, including Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

78. Consumers including Plaintiff, and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

79. FOSAMAX reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

80. As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JUDY GARNER sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and

related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

81. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

82. Plaintiff JUDY GARNER's spouse, DENNY GARNER, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

## COUNT V
### Fraudulent Misrepresentation

83. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

84. Defendant made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

   a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that

˜15˜

FOSAMAX had been tested and found to be safe and effective for the treatment of osteoporosis; and

b. Defendant represented that FOSAMAX was safer than other alternative medications.

85. Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

86. The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

87. Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

88. Plaintiff JUDY GARNER, Plaintiff's doctors, and others relied upon the representations.

89. Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

90. As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JUDY GARNER sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent

conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her injuries.

91. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

92. Plaintiff JUDY GARNER's spouse, DENNY GARNER, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

## COUNT VI
### Fraudulent Concealment

93. Plaintiffs re-allege the above paragraphs as if fully set forth herein.

94. Defendant fraudulently concealed information with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b. Defendant represented that FOSAMAX was safer than other alternative medications and

fraudulently concealed information which demonstrated that FOSAMAX was not safer than alternatives available on the market.

95. Defendant had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

96. The concealment of information by Defendant about the risks of FOSAMAX was intentional, and the representations made by Defendant were known by Defendant to be false.

97. The concealment of information and the misrepresentations about FOSAMAX were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

98. Plaintiff JUDY GARNER, Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Defendant concealed from Plaintiff's doctors and Plaintiff.

99. As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JUDY GARNER sustained significant and permanent injury of the jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of the injury suffered. Plaintiff has incurred and will continue to incur medical and related expenses as a result of her injury. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has suffered and will continue to suffer mental and physical pain as a result of her

injuries.

100. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

101. Plaintiff JUDY GARNER's spouse, DENNY GARNER, sustained a loss of consortium as a result of the injuries and damages sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support, and care. His losses are permanent and continuing in nature.

**WHEREFORE**, Plaintiff prays for relief on all Counts as follows:

a. compensatory damages on each cause of action;

b. punitive damages on each cause of action;

c. reasonable attorneys' fees where recoverable;

d. costs of this action; and

e. such other additional and further relief as the Court may deem necessary, appropriate, and just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 30th Day of April, 2008.

                              THE LEVENSTEN LAW FIRM, P.C.


                              By:___/s/EP0405_____

                                  Scott D. Levensten
                                  The Levensten Law Firm, P.C.
                                  1325 Spruce Street
                                  Philadelphia, PA 19107
                                  Telephone: (215) 545-5600
                                  Facsimile: (215) 545-5156
                                  E-Mail: sdl@levenstenlawfirm.com
                                  Attorneys for the Plaintiff